NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2022-0106

THE STATE OF NEW HAMPSHIRE

v.

CHARLES PAUL

Argued: September 14, 2023
Opinion Issued: November 14, 2023

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Audriana Mekula, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DONOVAN, J. The defendant, Charles Paul, appeals his convictions, following a jury trial in the Superior Court (Honigberg, J.), of attempted murder and of being a felon in possession of a deadly weapon. See RSA 629:1 (2016); RSA 630:1-a (Supp. 2022); RSA 159:3, I (2023). The defendant argues that the trial court erred by: (1) granting the State's motion in limine to admit evidence of his prior convictions under New Hampshire Rule of Evidence 609; and

(2) failing to disclose additional portions of the victim's mental health records submitted for in camera review. We conclude that the trial court did not err in either respect and we therefore affirm.

## I. Facts

The jury could have found the following facts. In late January 2019, the victim invited the defendant to stay with her at her parents' house while her parents were away on vacation for two weeks. The victim experienced paranoia and did not like staying in the house alone because she feared that others were "out to get her." She suffered from a number of mental health conditions and had been hospitalized in the past due to those conditions. However, the victim's father testified that when he and his wife vacationed in Florida in February 2019, they left the victim home alone and would not have done so if they were concerned about the status of her mental health.

While staying at the victim's home on February 6, 2019, the defendant woke the victim during the night. He testified that when he woke her, she attacked him with a knife. According to the defendant, he and the victim struggled for control of the knife, and he stabbed the victim multiple times in the neck to stop her from attacking him. The victim testified that she remembered little of the attack.

The State indicted the defendant on one count of attempted murder, one count of being a felon in possession of a deadly weapon, and three counts of first-degree assault. Both the defendant and the State filed motions for in camera review of the victim's mental health records. The trial court granted these motions, reviewed over 10,000 pages of records, and disclosed certain portions to the parties. The State also filed a motion in limine seeking to impeach the defendant at trial with felony convictions from 1987 and 1994 for which the defendant received stand committed as well as suspended sentences that were not imposed until 2010. Over the defendant's objection, the trial court granted the State's motion and permitted the State to introduce evidence that the defendant had previously been convicted of a felony offense in 1987 and of attempted escape in 1994. Following a five-day trial in December 2021, the jury convicted the defendant on all charges. Because the parties agreed that the first-degree assault charges were all lesser-included offenses of the attempted murder conviction, the trial court did not enter convictions on the assault charges. This appeal followed.

## II. Analysis

### A. Rule 609

We first address the defendant's claim that the trial court erred in admitting evidence of his prior convictions. The parties disagree as to whether

the defendant's prior convictions fall within the ten-year limitation set forth in New Hampshire Rule of Evidence 609(b). Resolving this dispute requires that we interpret the language of Rule 609. We review the trial court's interpretation of rules of evidence <u>de novo</u>. <u>See</u> <u>State v. Rivera</u>, 175 N.H. 496, 499 (2022). When interpreting a rule of evidence or a statute, we will first look to the plain meaning of the words used and ascribe to them their plain and ordinary meaning where possible. <u>Id</u>. at 500. We will not add words to the plain language of a rule. <u>State v. Munroe</u>, 173 N.H. 469, 472 (2020).

New Hampshire Rule of Evidence 609 provides, in relevant part:

(a) <u>In General</u>. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
(A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
(B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
(2) for a crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving — or the witness's admitting — a dishonest act or false statement.
(b) <u>Limit on Using Evidence After 10 Years</u>. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
(2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

<u>N.H. R. Ev.</u> 609. While Rule 609(b) does not absolutely bar the admission of a prior conviction that is more than ten years old, the rule provides that evidence of the conviction is admissible only if the probative value of a prior conviction substantially outweighs the prejudice caused by its admission into evidence. <u>N.H. R. Ev.</u> 609(b).

Before trial, the State moved to impeach the defendant with, as relevant to this case, two prior convictions: a 1987 aggravated felonious sexual assault (AFSA) conviction and a 1994 attempted escape conviction. With regard to the 1987 AFSA conviction, the defendant was sentenced to seven-and-one-half to fifteen years, all suspended. As a result of his 1994 attempted escape conviction, the defendant was sentenced to three-and-one-half to seven years,

suspended for five years upon the expiration of his other sentence. In 2008, the defendant was charged with being a felon in possession of a deadly weapon and failure to report certain information as a sexual offender. In 2010, as a result of these violations of the conditions of his suspended sentences, the Superior Court imposed three-and-one-half to seven years of the defendant's suspended sentence for the 1987 AFSA conviction and three-and-one-half to seven years of his sentence for the 1994 attempted escape conviction, to be served concurrently. The defendant completed his prison sentences for the AFSA conviction in 2014 and for the attempted escape conviction in 2016.

The trial court ruled that the defendant's prior convictions were "within the 10 years that is specified . . . in the rules." It explained that, "in terms of timeliness, both convictions fall within the 10 years, as that's been interpreted, to be either conviction or completion of the sentence." The court thus rejected the defendant's argument that his convictions should be analyzed under the balancing test for remote convictions in Rule 609(b). The trial court granted the State's motion, allowing the State to impeach the defendant with both convictions and to describe the attempted escape offense because "[w]hile not a pure dishonesty, it does reflect a disregard for the law, a disregard for the norms of society."

Because the trial court determined that the imposition of the defendant's previously suspended sentences brought his prior convictions within the ten-year limitation period of Rule 609, it applied the Rule 609(a)(1)(B) balancing test rather than the Rule 609(b)(1) balancing test applied to remote convictions. Accordingly, at issue in this appeal is whether the imposition of a suspended sentence constitutes "confinement for" the original conviction for the purposes of the ten-year limitation under Rule 609(b). The defendant argues that, under Rule 609(b), the imposition of a suspended sentence does not constitute "confinement for" the original conviction because, when a conviction results in a fully suspended sentence, a defendant is released from confinement for that conviction on the date of the initial sentencing, not the date he or she is released from a subsequently imposed sentence.

Conversely, the State argues that "release from confinement" for the purposes of Rule 609(b) occurs only when all restrictions and conditions imposed on a defendant's liberty as a result of a specific conviction have expired. The State's proposed interpretation of "confinement" includes any restraint on a defendant's liberty through incarceration, parole or probation conditions, other conditions, or a suspended or deferred sentence. It reasons that a defendant subject to a suspended or deferred sentence remains restrained during his or her release on that sentence because he or she must still comply with certain conditions or face potential incarceration if those conditions are violated. Here, however, we need only consider whether the imposition of a suspended sentence constitutes "confinement for" the original conviction pursuant to Rule 609(b). Accordingly, we decline to consider

4

whether a period during which a defendant is subject to conditions of probation or during which a sentence is suspended but never imposed constitutes "confinement for" the original conviction.

The defendant relies upon cases in which we have distinguished the procedure for imposing a suspended sentence from the procedure for initial sentencing to argue that the imposition of a previously suspended sentence does not constitute "confinement for" the original conviction. See State v. Williams, 174 N.H. 635, 646 (2021); State v. Gibbs, 157 N.H. 538, 540-42 (2008). In Gibbs, we held that the process of imposing a suspended sentence is fundamentally different from that of an initial sentence because the imposition of a suspended sentence is the remedy for a defendant's noncompliance, not a punishment for the underlying acts. Gibbs, 157 N.H. at 541. However, we also explained that the imposition of a suspended sentence for failing to meet a condition of its suspension merely implements the sentence under its original terms. Id. at 540. When the court retains the power to impose incarceration at a later time, the defendant's liberty remains conditioned upon his or her compliance with the original sentence's terms. See Stapleford v. Perrin, 122 N.H. 1083, 1088 (1982). A suspended sentence is imposed because the defendant has violated the terms of suspension, but the imposed sentence is not a sentence for the violative conduct. See RSA 651:21 (2016). In other words, although the imposition of a suspended sentence is the remedy for a violation of the conditions of suspension, the sentence itself relates back to the underlying conviction. Thus, the imposition of a suspended sentence is "confinement for" the original conviction for purposes of Rule 609(b).

The defendant further argues that Rule 609(b) envisions only two dates: the date of "the witness's conviction" and the date of "the witness's . . . release from confinement for it." (Quotations omitted.) See N.H. R. Ev. 609(b). He asserts that nothing in the rule suggests that a single conviction could correspond to multiple releases from confinement and that the rule does not support an interpretation that allows any event to "reset the clock" to zero. Therefore, he argues that once a defendant is released on a suspended sentence, that initial release — regardless of any subsequent confinement — is the starting point of the ten-year limitation period, and the starting point cannot be changed. We disagree. "Confinement for" a conviction includes confinement resulting from the imposition of a suspended sentence and, under the circumstances at issue in this case, the ten-year time limitation cannot be measured solely from the two dates suggested by the defendant.

Accordingly, we hold that when a defendant is confined following an initial period of release on a suspended sentence, the relevant date for purposes of Rule 609(b) is the later of either the date the defendant is released on the suspended sentence or, if the suspended sentence is subsequently imposed, the date the defendant is released from confinement for that

5

sentence. Here, the defendant was convicted in 1987 and 1994, but, because he subsequently violated the terms and conditions of his suspended sentences and those sentences were imposed, he was not released from confinement for those convictions until 2014 and 2016. Therefore, the relevant dates for determining the ten-year limitation period are 2014 for the 1987 AFSA conviction and 2016 for the attempted escape conviction because these are the dates of "the witness's conviction or release from confinement for it, whichever is later." N.H. R. Ev. 609(b).

Our conclusion that the imposition of a suspended sentence constitutes "confinement for" the original conviction is supported by the decisions of federal courts interpreting Federal Rule of Evidence 609, upon which our rule is modeled. See Fed. R. Ev. 609.[1] A majority of federal courts that have addressed this question have held that the imposition of a prison sentence due to a violation of supervised release or parole constitutes "confinement for" the original conviction within the meaning of the federal rule. See, e.g., United States v. Lapteff, 160 F. App'x 298, 303-04 (4th Cir. 2005) (reasoning that, because the revocation of supervised release "relates back to the underlying conviction," the defendant's "violation of a condition of that supervised release and concomitant incarceration constitutes confinement for the original conviction within the meaning of Rule 609(b)"); United States v. Gray, 852 F.2d 136, 139 (4th Cir. 1988) (holding that the ten-year limitation in Federal Rule of Evidence 609 did not apply where the defendant was convicted more than ten years prior to trial but was subsequently incarcerated for parole violations and remained incarcerated at the time of trial); United States v. Brewer, 451 F. Supp. 50, 52-53 (E.D. Tenn. 1978) (holding that reconfinement pursuant to a parole violation is confinement imposed for the original conviction and therefore the release date from a second period of confinement is the date used for purposes of Rule 609(b)). Similarly, a majority of courts in other states that have interpreted analogous rules of evidence agree. See, e.g., State v. Rowland, 262 P.3d 1158, 1160-62 (Or. Ct. App. 2011); State v. O'Dell, 854 P.2d 1096, 1099 (Wash. Ct. App. 1993); Com. v. Jackson, 585 A.2d 1001, 1002 (Pa. 1991); People v. Owens, 373 N.E.2d 848, 850 (Ill. App. Ct. 1978).

The defendant argues that, even if we agree with the trial court that the imposition of a suspended sentence constitutes "confinement for" the original conviction, we should adopt the approach followed by the United States Court of Appeals for the Ninth Circuit in United States v. Wallace, 848 F.2d 1464, 1472-73 (9th Cir. 1988), and United States v. McClintock, 748 F.2d 1278, 1287-89 (9th Cir. 1984). The McClintock Court concluded that "confinement pursuant to probation revocation, where the violation involved a substantive probation condition and closely parallels the initial, fraudulent activity,"

---

[1] While decisions of the federal courts may be helpful in interpreting analogous New Hampshire Rules of Evidence, we are the final interpreter of our rules. State v. Long, 161 N.H. 364, 367 (2011).

6

constitutes confinement for the original conviction.  McClintock, 748 F.2d at 1288.  The Wallace Court similarly concluded that, because the defendant's perjury conviction "was not substantively related or parallel to the original heroin conviction," the revocation of her parole "based on the perjury charge does not constitute confinement for the original heroin conviction tolling the ten-year limit of Rule 609(b)."  Wallace, 848 F.2d at 1472-73.

Under this line of reasoning, the defendant argues that his suspended sentences were not imposed for conduct that was "substantively related or parallel to" his original AFSA and attempted escape convictions, so the imposition of those sentences should not be considered "confinement for" the original convictions.  (Quotations omitted.)  He argues that, even if his failure to register as a sexual offender is related to his AFSA conviction, that conduct was unrelated to the attempted escape conviction, so the court erred by treating both convictions as falling within Rule 609(a) and by failing to apply Rule 609(b)'s balancing test.  However, a majority of courts have declined to adopt the rule originally stated in McClintock.  See, e.g., O'Dell, 854 P.2d at 1098-99; Jackson, 585 A.2d at 1003.  We decline to do so as well.  We agree with the O'Dell Court, which reasoned that, because the Wallace Court "did not base its result on interpretation of the language of the rule, but rather relied on general policy concerns as to the fairness of prior convictions as a basis for impeachment," its rule did not "comport[] with the general standards of statutory interpretation" and "would be difficult to apply in practice."  O'Dell, 854 P.2d at 1099.  The O'Dell Court therefore ruled that the implementation of the rule in Wallace would be "impractical and undesirable."  Id.

Accordingly, we find no error in the trial court's determination that the defendant's prior convictions, for which he was released from confinement in 2014 and 2016, fall within the ten-year period and thus were subject to the balancing test in Rule 609(a)(1)(B).

B. In Camera Review

The defendant next argues that the trial court may have erred by failing to disclose certain mental health records of the victim that were submitted for in camera review.  The State argues that the defendant has not met his burden on appeal of establishing that the trial court erred.

When reviewing the records, the trial court must determine if material and relevant evidence is in fact contained in the records.  State v. Girard, 173 N.H. 619, 627 (2020).  Evidence "is material only if there is a reasonable probability that" disclosure of the evidence will produce a different result in the proceeding.  Girard, 173 N.H. at 628 (quotation omitted).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  Id.  Evidence is relevant if: "(a) it has any tendency to make a fact more or less

7

probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." N.H. R. Ev. 401.

We review a trial court's ruling on the management of discovery to determine whether its decision is sustainable. State v. Racette, 175 N.H. 132, 141 (2022); Girard, 173 N.H. at 627. When a defendant argues on appeal that a trial court's ruling regarding the disclosure of privileged records is unsustainable, we must review the same records and determine whether the ruling was clearly unreasonable or untenable to the prejudice of his case. See Girard, 173 N.H. at 627.

After reviewing the records submitted to the trial court as well as the record of the trial court proceedings, we conclude that, under the standard clarified in Girard, none of the undisclosed records contains information that is material and relevant. Accordingly, we find no error.

Affirmed.

MACDONALD, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred.